Matter of Ciaccio (2024 NY Slip Op 04702)

Matter of Ciaccio

2024 NY Slip Op 04702

Decided on September 27, 2024

Appellate Division, Fourth Department

Per Curiam

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on September 27, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., OGDEN, NOWAK, DELCONTE, AND KEANE, JJ. (Filed Aug. 9, 2024.) 

&em;

[*1]MATTER OF MICHAEL S. CIACCIO, AN ATTORNEY, RESPONDENT. GRIEVANCE COMMITTEE OF THE FIFTH JUDICIAL DISTRICT, PETITIONER.

OPINION AND ORDER
Order of disbarment entered.
Per Curiam.
Opinion: Respondent was admitted to the practice of law by the Appellate Division, Third Department, on April 22, 2009, and his attorney registration information on file with the Office of Court Administration indicates that he maintains an office in Onondaga County. In February 2022, the Grievance Committee filed a petition alleging that respondent counseled or assisted a client in forging four quitclaim deeds purportedly transferring certain real property to the client. Respondent filed an answer denying material allegations of the petition, and this Court appointed a referee to conduct a hearing. The Referee scheduled the hearing for August 2023, but on the first day of the proceeding the parties stipulated to various facts alleged in the petition, obviating the need for a fact-finding hearing. The Referee subsequently held a mitigation hearing wherein respondent testified, inter alia, that the client coerced respondent to participate in the fraudulent scheme through physical violence and intimidation. The Referee has filed a report sustaining the disciplinary rule violations alleged in the petition and finding that respondent's testimony in mitigation was not credible. The Grievance Committee moves to confirm the report of the Referee and for a final order of discipline. Respondent cross-moves for an order disaffirming the Referee's report and requests that this Court consider his hearing testimony and other factors in mitigation. In June 2024, respondent appeared before this Court for the return date of the motion and cross-motion, at which time he was heard in mitigation.
With respect to the factual allegations of the petition, the Referee found that, in or around October 2018, respondent agreed to represent a client whose father had been incapacitated by a stroke in late September 2018. The Referee found that before meeting with respondent, the client had arranged for another attorney to prepare quitclaim deeds and related documents transferring ownership of four properties owned by the father to the client. The Referee found that the client received the unsigned deeds on or about October 9, 2018, after which respondent notarized the father's forged signature on two of the deeds and observed the client notarize the father's forged signature on the other two deeds using respondent's notary stamp. The Referee found that all of those notarizations were backdated to September 20, 2017. The Referee further found that, in mid-October 2018, respondent agreed to represent the client in an effort to sell two of the properties using the fraudulent deeds. In relation to one of those transactions, respondent prepared and notarized an affidavit wherein the client attested that the deed in question had been executed by the father on September 20, 2017, but that the client had inadvertently neglected to file the deed with the county clerk. The Referee further found that, in late October 2018, respondent commenced a proceeding on behalf of the client, pursuant to article 81 of the Mental Hygiene Law, seeking to appoint the client as guardian for his incapacitated father. The court presiding over the article 81 proceeding appointed Mental Hygiene Legal Services (MHLS) as court evaluator, and MHLS subsequently advised the court that two of the father's properties had been listed for sale while the father was incapacitated. The Referee found that respondent thereafter sent to MHLS a copy of a purported durable power of attorney designating respondent's client as agent for the client's father. The Referee further found that the power of attorney contained the father's forged signature, which had been notarized by respondent and was backdated to September 20, 2017. The Referee found that, in November 2018, another attorney was substituted for respondent as counsel for the client in the article 81 proceeding. Replacement counsel thereafter filed the fraudulent power of attorney with the county clerk, unaware that the document had been forged and falsely notarized by respondent. The Referee also found that respondent falsely advised another attorney, who was representing the client's brother in certain court proceedings, that respondent had met with the father in person in September 2017 and that the deeds had been executed by the father at that time and notarized by respondent.
During the mitigation hearing before the Referee, respondent testified that he participated in the fraudulent scheme set forth in the stipulation of the parties because the client beat him and [*2]threatened him with a gun. Respondent further testified that he continued to assist the client and never disclosed the fraud to the appropriate authorities because the client actively threatened respondent and his family for several years after the deeds were forged. However, the Referee found that respondent's testimony in mitigation lacked credibility, particularly given its self-interested nature and the lack of any evidence corroborating the testimony with regard to threats or physical violence, such as phone records, photographs, videos, medical records, or police reports.
We confirm the factual findings of the Referee, find respondent guilty of professional misconduct, and conclude that respondent has violated the following provisions of the Rules of Professional Conduct (22 NYCRR 1200.0):
rule 1.2 (d)—counseling or assisting a client to engage in conduct that the lawyer knows is illegal or fraudulent;
rule 3.3 (a) (1)—knowingly making a false statement of fact or law to a tribunal or failing to correct a false statement of material fact or law previously made to a tribunal by the lawyer;
rule 3.3 (a) (3)—offering or using evidence that the lawyer knows to be false;
rule 8.4 (b)—engaging in illegal conduct that adversely reflects on the lawyer's honesty, trustworthiness, or fitness as a lawyer;
rule 8.4 (c)—engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;
rule 8.4 (d)—engaging in conduct that is prejudicial to the administration of justice; and
rule 8.4 (h)—engaging in conduct that adversely reflects on the lawyer's fitness as a lawyer.
Respondent's cross-motion primarily challenges the sufficiency of the evidence and credibility determinations of the Referee. However, it is well settled that when the resolution of issues in a disciplinary proceeding depends upon the credibility of witnesses, a referee's findings are entitled to great weight (see Matter of Cellino, 21 AD3d 229, 231 [4th Dept 2005]). Here, we conclude that the credibility determinations that were adverse to respondent are supported by the record and, therefore, we decline to disturb them.
In determining an appropriate sanction, we have considered the numerous aggravating factors established by the record, including that respondent knowingly and intentionally made false statements and created or used fabricated documents in relation to several legal transactions or proceedings, in direct contravention of his ethical obligations as an attorney and officer of the court. As such, respondent engaged in a lengthy course of intentional dishonesty and deceit that "strikes at the very heart of our system of administration of justice . . . and serves to undermine public trust and confidence in the legal profession" (Matter of Hobika, 271 AD2d 122, 123 [4th Dept 2000] [quotation marks omitted]). The fact that respondent sought to involve other unsuspecting lay persons and attorneys in the fraudulent scheme is an additional aggravating factor (see id.). We have also considered as a substantial aggravating factor respondent's protracted course of intentional dishonesty in an effort to conceal the fraudulent scheme from the Grievance Committee, the Referee, and this Court. We conclude that respondent has demonstrated that he is unfit to practice law. Accordingly, respondent should be disbarred.